**Joseph A. BARFIELD, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 87A05–0203–CR–144.

Court of Appeals of Indiana.

Oct. 8, 2002.

Frank R. Hahn, Newburgh, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

### STATEMENT OF THE CASE

Joseph A. Barfield brings this interlocutory appeal of the trial court's denial of his motion to suppress.

We reverse.

### ISSUE

Whether the trial court erred in denying his motion to suppress.

### FACTS

Shortly before 2:00 a.m. on March 30, 2001, Sheriff's Deputy Jason Vandiver was on duty in a rural area of Warrick County when he observed Joseph Barfield drive past at a high rate of speed and without a functioning taillight. Vandiver pulled him over, with emergency lights activated on his marked car. When Vandiver exited his car and approached Barfield, he found

Barfield "very nervous." (Tr. 6). This prompted Vandiver to start back to his car to call for backup. At that point, Officer Schuble of the Chandler Police Department arrived, having heard Vandiver report the stop. Vandiver "ran [Barfield's] driving information" and learned that Barfield's license was valid. (Tr. 10).

Vandiver considered Barfield to be unusually nervous: he kept looking at Vandiver in his rear view mirror, smoking cigarettes, and tapping his fingers on the door panel. Vandiver went back to Barfield's vehicle, with Schuble at his side. Based on concern for his personal safety, Vandiver asked Barfield's consent to search his car, "to make sure he didn't have any weapons" inside; Barfield agreed. (Tr. 11). Vandiver then asked Barfield "to step out of the vehicle" and "told him" that he would "do ... a pat down search just to make sure he didn't have any weapons on him while we searched the vehicle." (Tr. 12).

Vandiver felt a bulge in Barfield's back jeans pocket and "pulled [it] out to make sure what it was." (Tr. 13). Seeing that the item was a wallet, Vandiver "set [it] on top of the car." *Id.* Vandiver next felt "a bulge" on one side of Barfield's jacket and "pulled it out and it was a soft pack of cigarettes that was partially full;" he placed "that on top of the car with the wallet." (Tr. 14). When he felt "something like a box" on the other side of the jacket, Vandiver "reached in there and pulled it out and it was a Marlboro 100's box." (Tr. 14–15). Vandiver thought the "weight distribution of the pack" was strange, in that "the weight seemed to be at the bottom of the cigarette pack," and he shook it at which point he heard "something moving around the box." (Tr. 15). Vandiver "then opened the box" and "looked inside." *Id.* He "saw a clear plas-

tic bag that had a light colored substance in it with a twist tie sealing it." *Id.*

Barfield was read his *Miranda* rights. The continued search of Barfield's person revealed no weapons; nor did the search of his car. A field test on the substance in the box tested positive for methamphetamine, and Barfield was arrested. On May 10, 2001, the State charged Barfield with possession of a controlled substance, and possession with intent to distribute.

Barfield filed a motion to suppress, asserting that during "an improperly conducted protective 'frisk' of the Defendant for weapons during an administrative stop for traffic infractions," the contents of the Marlboro box had been obtained in violation of his rights under the Fourth Amendment of the United States Constitution and under Article 1, Sec. 11 of the Indiana Constitution. (App.47). At a December 6, 2001, hearing on the motion, the foregoing evidence was heard. The trial court denied Barfield's motion.

## DECISION

Barfield claims that Vandiver violated his constitutional rights in conducting a search of Barfield that exceeded the bounds of a *Terry* patdown for weapons and the *Dickerson* plain feel doctrine. We agree.

Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution protect the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures. *Johnson v. State,* 710 N.E.2d 925, 927 (Ind.Ct.App. 1999). Generally, a lawful search requires a judicially issued search warrant. *Id.* However, the warrant requirement is subject to a few specific and "well-delineated" exceptions. *Id.* When a search takes place without a warrant, the burden of proof is on the State to prove that the search fell within one of those narrow exceptions. *Id.*

■ Pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may briefly detain a person for investigatory purposes. Barfield concedes that his operation of the vehicle without a functioning taillight warranted a traffic stop, and that in such cases, *Terry* permits a frisk for weapons. *See Terry*, 392 U.S. at 24, 30, 88 S.Ct. 1868 (where officer is justified in believing that the individual being investigated may be armed and a danger to the officer, a limited patdown search of the suspect's *outer* clothing may be conducted to search for a weapon). As we explained in *Jackson v. State*, 669 N.E.2d 744, 747 (Ind.Ct.App. 1996), the purpose of this search "is not to discover evidence of a crime, but to allow the officer to pursue the investigation without fear." (citing *Minnesota v. Dickerson*, 508 U.S. 366, 373–75, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). Thus, this search is permitted when a reasonably prudent person in the same circumstances would be warranted in believing that the officer's safety was in danger. *Jackson*, 669 N.E.2d at 747.

■ The seizure of contraband detected during the lawful execution of a *Terry* search is permissible under the "plain feel doctrine." *Johnson*, 710 N.E.2d at 928. If during the lawful patdown of "the suspect's outer clothing," the officer "feels an object whose contour or mass makes its identity" as contraband "immediately apparent" to that officer, a warrantless seizure may be executed. *Id.* (quoting *Dickerson*, 508 U.S. at 375–76, 113 S.Ct. 2130).

■ As Barfield correctly asserts, no testimony by Vandiver indicated that he perceived any item felt by the patdown of Barfield's outer clothing to be a weapon. Nevertheless, he proceeded item-by-item to remove the contents within Barfield's clothing. The State does not address the removal of Barfield's wallet and first cigarette pack. It does argue that the "unusual weighting and movement of the contents of the Marlboro" box justified its removal from Barfield's "pocket because it could legitimately have contained a weapon," specifically "a razor blade or a small knife" that "could have been used against the officers as they searched [Barfield's] vehicle." State's Br. at 8. However, Vandiver never testified that he thought that the Marlboro box contained a weapon. *See e.g., Granados v. State*, 749 N.E.2d 1210, 1213–14 (Ind.Ct.App.2001). Thus, we find this argument cannot surmount the protections that our constitution provides.

Vandiver did not testify to any fear that the box itself was a weapon. There were two armed officers, and a man who had agreed to the search of his car. The man's pockets were being systematically emptied and the contents placed on the top of his car. Further, according to Vandiver's testimony, when he felt the Marlboro box, there was no immediate perception on his part that *it was contraband*. In other words, the testimony does not support a finding that "at the time of the protective patdown," the identity of what Vandiver felt in Barfield's pocket "was immediately apparent to him" as being contraband. *See Johnson*, 710 N.E.2d at 930. Therefore, Vandiver's action in removing the box and looking inside it was a search that "exceeded the permissible bounds of a legitimate patdown." *Id.*

The State failed to bear its burden of proving that the seizure of the Marlboro box fell within an exception to the constitutional warrant requirement. Hence, the trial court abused its discretion in denying Barfield's motion to suppress. *Id.*

We reverse.

BROOK, C.J., and KIRSCH, J., concur.