OPINION
RILEY, Judge.

STATEMENT OF THE CASE

Appellant-Defendant, Adam Miller (Miller), appeals the trial court’s denial of his motion to suppress.
We reverse.

ISSUE

Miller raises four issues, one of which we find dispositive and restate as the following: Whether the trial court erred by denying his motion to suppress.

FACTS AND PROCEDURAL HISTORY

On January 9, 2011, Officer Jordan Has-ler of the Bloomington Police Department (Officer Hasler) was patrolling in his vehicle when he saw a vehicle driven by Miller. After confirming that the vehicle’s license plate sticker had expired, he initiated a traffic stop of Miller’s vehicle. Officer Hasler saw Miller reach toward the right side of the car. Miller turned into a nearby restaurant parking lot and parked his car in a handicapped parking space, reaching toward the left side of the car as he did so.
Officer Hasler exited his vehicle and approached Miller’s vehicle on the passenger side. Miller exited his car, coming out all the way out as he saw Officer Hasler at the rear right bumper. Miller appeared irate and Officer Hasler commanded him to return to the inside of the car. Miller continued to exit the car three more times, with Officer Hasler commanding him to return. However, on the fourth time, Officer Hasler handcuffed Miller outside the car. The parking lot was filled with people during this time.
Officer Hasler commenced a patdown of Miller’s clothing. He found no weapons but noticed the smell of burnt marijuana *1027 on Miller’s clothes. Officer Hasler asked Miller why he smelled of marijuana and Miller replied that he did not smoke marijuana and that his father was a police officer. Officer Hasler asked Miller whether he had any “guns, knives, needles [...] rocket launchers or grenades in his car.” (Transcript p. 10). Miller responded, “none that [Officer Hasler] needed to know of.” (Tr. p. 10). Officer Hasler did not believe this was a common answer and was concerned that Miller may have a weapon.
Additional officers arrived at the scene. Officer Hasler determined that the car was registered to Miller, but pursuant to Bloomington Police Department policy, decided to have the vehicle towed because of its expired license plate sticker. Pursuant to policy, the officers began an inventory search of Miller’s car prior to towing. Officer Hasler issued Miller a citation. Miller was released from his handcuffs and told that he was free to leave. Miller said that he needed his cell phone and backpack which were still inside his car.
Officer Hasler retrieved the backpack and searched it for weapons. Inside the backpack, Officer Hasler saw two containers held together with a rubber band: a transparent Tupperware container that had green residue which Officer Hasler believed to be marijuana, and an opaque “wooden container that contained a smoking device that emitted burnt marijuana odor.” (Tr. p. 18).
Miller was arrested for possession of paraphernalia and the officers continued their inventory search of Miller’s vehicle. Officer Hasler took Miller’s car key to open the glove box in his car. Inside, a loaded handgun and a magazine containing 30 rounds of ammunition was found. Miller had a license to possess the handgun. Approximately 45 minutes to an hour elapsed from the beginning of the traffic stop to Miller’s eventual booking at jail.
On January 10, 2011, the State filed an Information charging Miller with Count I, possession of paraphernalia, a Class A misdemeanor, Ind.Code § 35-48-4-8.3(a)(l). On November 7, 2011, Miller filed a motion to suppress the evidence, alleging violations of both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. On February 13, 2012, a hearing was held with Officer Hasler and Miller providing testimony. The trial court took the matter under advisement. On February 21, 2012, Miller filed a brief in support of his motion to suppress.
On February 24, 2012, the Stated filed a motion to reopen evidence. The State alleged that Officer Hasler had additional testimony required to resolve an issue concerning the level of invasiveness of Officer Hasler’s search of the backpack. On February 27, 2012, Miller opposed the State’s motion alleging prejudice if the State was permitted to present additional evidence after Miller had filed his. memorandum in support of his motion to dismiss. On March 15, 2012, the trial court held an additional hearing. Over, objection, .the State briefly examined Officer Hasler on his experience with marijuana smoking paraphernalia, particularly the paraphernalia found in Miller’s backpack. Miller then extensively cross-examined Officer Miller on the paraphernalia, the inventory search, his questioning of Miller regarding weapons, and his experience with hidden weapons.
On August 8, 2012, the trial court issued its Order denying Miller’s motion to suppress. On August 24, 2012, Miller filed a motion to correct error and on September 7, 2012, filed a motion to certify the trial court’s Order for interlocutory appeal. On October 3, 2012, the trial court denied Miller’s motion to correct error and certified its Order for interlocutory appeal. On *1028 December 14, 2012, we accepted interlocutory appeal.
Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. Motion to Suppress
Miller argues that the trial court abused its discretion by denying his motion to suppress. He contends that Officer Has-ler’s search of his backpack violated his rights under the Fourth Amendment of the United States Constitution. Specifically, he asserts that Officer Hasler’s war-rantless search of the backpack was not based on a reasonable suspicion of criminal activity or reasonable safety concerns. He also contends that the automobile exception to the Fourth Amendment does not apply.
We review a denial of a motion to suppress similar to other sufficiency matters. Dora v. State, 957 N.E.2d 1049, 1052 (Ind.Ct.App.2011), reh’g denied, trans. denied. We do not reweigh the evidence, but consider conflicting evidence in the light most favorable to the trial court’s ruling. Id. Uncontested evidence, however, is viewed in favor of the defendant. Id.
A. Terry Stop
The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures; its protections extend to the States through the Fourteenth Amendment. Id. Warrantless searches are generally prohibited under the Fourth Amendment. Berry v. State, 704 N.E.2d 462, 465 (Ind. 1998). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. Id.
In upholding the search of Miller’s backpack, the trial court relied primarily upon the United States Supreme Court decision in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which permits a warrantless but “reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.” Id. at 27, 88 S.Ct. 1868. “The officer need not be absolutely certain that the individual is armed; rather, the issue is whether a reasonable prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger.” Id.
In Berry, a police officer found Berry sleeping under some bushes. Berry, 704 N.E.2d at 465. Berry was not under arrest nor considered dangerous. See id. After his story did not check out, the officer and Berry went to the officer’s patrol car. Id. The officer picked up Berry’s backpack, placed it on her patrol car, and heard a metallic sound. Id. at 465-66. The police officer searched both Berry and the backpack and found a handgun and ammunition. Id. at 466. The Berry court noted that, “circumstances that justify a Terry stop and search of a person for a weapon do not automatically justify examination of the contents of items carried by that person such as purses, backpacks or briefcases.” Berry, 704 N.E.2d at 465. However, “where either the suspicion that criminal activity may be afoot or a concern over the possibility of harm is reasonably heightened during the stop, the police are authorized to search such items within the suspicious person’s immediate control.” Id. at 466.
The Berry court relied on Owens v. State, 497 N.E.2d 230, 232 (Ind.1986), to uphold the search. In Owens, police stopped Owens based on a description of a robbery suspect. Id. at 231. After his *1029 story did not check out, an officer placed Owens’ bag on the patrol car and heard a metallic sound. Id. A subsequent patdown and search of the bag revealed a sawed-off shotgun. Id. The distinguishing feature in both cases was that the police could point to an articulable fact in support of “a concern over the possibility of harm [being] reasonably heightened during the stop.” Berry, 704 N.E.2d at 466.
 Because Officer Hasler did not point to articulable facts supporting either a suspicion of criminal activity or a concern over the possibility of harm, we conclude that Officer Hasler’s search of Miller’s backpack was impermissible under the Fourth Amendment. Miller was initially detained by Officer Hasler for driving with an expired license plate registration sticker. Due to Miller’s unusual behavior, he was restrained and frisked for weapons by Officer Hasler. After Miller refused to consent to a search of his vehicle, Miller’s vehicle was to be inventoried and towed pursuant to Bloom-ington Police Department policy. Officer Hasler issued him a citation and Miller was released from handcuffs and told that he was free to go. Based upon Miller’s request, Officer Hasler retrieved the backpack from the vehicle but searched his backpack. In explaining why he searched Miller’s backpack, Officer Has-ler testified on cross-examination as follows:
[OFFICER HASLER]: [...]. I was going to search for weapons due to the fact that it was in the vehicle and it was being inventoried.
[MILLER]: So is it a — sorry, was it a search for weapons or an inventory?
[OFFICER HASLER]: If a person comes to me and says I want a backpack or I want a hat in my car and it’s being inventoried, I’m going to search it for weapons prior to giving it back to him because I’m not going to hand him a case or a back pack after inventory in it that has a'handgun or knife or something inside of it, for my safety.
[MILLER]: Okay. If I were a student, would you refuse to let me get my books out of the car before your searched the book bag?
[OFFICER HASLER]: I would search [... ] simply for our safety because you could have razor blades or other sharp objects or cut out, you know, a handgun could be in a book, I mean.
[OFFICER HASLER]: Would you say if you stopped [the trial court judge] and his tags, were expired and he said, hey I’d like to get my briefcase out of there. It’s got my files for [c]ourt today. You’d search it before you handed it to him?
[OFFICER HASLER]: Yes, sir.
(Tr. pp. 21, 24).
Unlike Owens and Berry, the traffic stop here terminated with the issuance of a citation. Officer Hasler did not point to any suspicion that criminal activity was afoot, nor any facts in support of “a concern over the possibility of harm [being] reasonably heightened during the stop.” Berry, 704 N.E.2d at 466. Instead, Officer Hasler’s testimony demonstrates that his election to search the backpack was based upon procedure. We conclude that this is insufficient under these circumstances.
In defense of Officer Hasler’s search, the State points to Miller’s erratic behavior prior to and immediately after the stop. As with many search cases and probable cause issues, the timing of events and the officer’s knowledge are critical in determining the validity of the search. Sears v. State, 668 N.E.2d 662, 666 (Ind.1996), overruled on other grounds, Scisney v. State, 701 N.E.2d 847, 849 (Ind.1998). Officer Hasler’s issuance of the citation ended the encounter and therefore the Terry stop; *1030 Miller had been released from his handcuffs and told that he was free to go. Miller’s erratic behavior was too attenuated to furnish either a suspicion of criminal activity or belief that it posed a safety threat to trigger a new Terry stop after having been released. We therefore conclude that Officer Hasler’s search of Miller’s backpack was impermissible under the Fourth Amendment.[1]
B. Automobile Exception
In upholding the search of Miller’s backpack, the trial court also relied on the automobile exception to the Fourth Amendment. The trial court reasoned that Officer Hasler’s search was supported by probable cause based upon Officer Has-ler’s prior observation that Miller’s clothes smelt of burnt marijuana. On appeal, Miller argues that Officer Hasler’s search was not based on probable cause.
A search falls within the automobile exception when a vehicle is readily mobile and there is probable cause to believe it contains contraband or evidence of a crime. See Meister v. State, 938 N.E.2d 875, 878-79 (Ind.2010). If probable cause exists, the police have the authority to search a vehicle and all containers located therein. See Krise v. State, 746 N.E.2d 957, 962 (Ind.2001). However, “the scope of a warrantless search based on probable cause is no narrower — and no broader— than the scope of a search authorized by a warrant supported by probable cause.” Id. at 962.
The trial court concluded that “the distinctive odor of burnt marijuana emanated from [Miller’s] clothes” “justifie[d] a search of the vehicle and containers therein based on probable cause.” (Appellant’s App. p. 14). It also reasoned that Officer Hasler’s observation of green residue inside the Tupperware container found in Miller’s backpack “bolsters finding probable cause.” (Appellant’s App. p. 14). We disagree.
“Facts necessary to demonstrate the existence of probable cause for a warrantless search are not materially different from those which would authorize the issuance of a warrant if presented to a magistrate.” Meister, 933 N.E.2d at 879. Probable cause to issue a search warrant exists where the facts and circumstances would lead a reasonably prudent person to believe that a search would uncover evidence of a crime. Id. Officer Hasler noticed the smell of burnt marijuana emanating from Miller’s clothes prior to restraining him. Officer Hasler asked Miller why his clothes smelled of burnt marijuana and Miller replied that he did not smoke marijuana and that his father was a police officer. Following his pat-down of Miller’s clothes, Officer Hasler did not find marijuana. Thereafter, Officer Hasler issued him a citation and told Miller that he was free to leave.
We have recognized that the odor of marijuana on a person’s breath and emanating from inside a vehicle may give rise to probable cause that a person possesses marijuana. Edmond v. State, 951 N.E.2d 585, 590-91 (Ind.Ct.App.2011). At the same time, “[b]eeause the odor of burnt marijuana might linger in a vehicle for a period of time, that odor does not necessarily indicate illegal activity by a current occupant.” Id. at 591. Here, there is no evidence that the odor of marijuana ema *1031 nated from the vehicle. Following Miller’s request, Officer Hasler entered Miller’s vehicle to retrieve the backpack yet he did not testify that the vehicle smelled of marijuana. To the extent that the State argues that Miller’s prior actions supplied probable cause, we again conclude that these circumstances are too attenuated given that Officer Hasler’s patdown found no marijuana and Miller was told that he was free to leave. Because we conclude that Officer Hasler provided no facts and circumstances that would lead a reasonably prudent person to believe that a search would uncover evidence of a crime, probable cause to search Miller’s backpack did not exist. As a result, the automobile exception to the Fourth Amendment cannot be applied to uphold the search. Therefore, the trial court erred by denying Miller’s motion to suppress.

CONCLUSION

Based on the foregoing, we conclude that the trial court erred by denying Miller’s motion to suppress.
Reversed.
BROWN, J., concurs.
BRADFORD, J., dissents with separate opinion.

. Because we conclude that the search of Miller's backpack and subsequent discovery of paraphernalia were improper under the Fourth Amendment, we do not address the parties’ arguments on whether the search comported with Article 1, Section 11 of the Indiana Constitution. Further, because we reverse the trial court, we do not discuss whether the trial court abused its discretion by reopening the evidence on the motion to suppress.